

FILED

NOV 0 8 2018

Chief Judge Ruben Castillo
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

VICENTE ZAMBADA NIEBLA

No. 18 CR 484

Judge Rubén Castillo

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant VICENTE ZAMBADA NIEBLA, and his attorney, FRANK PEREZ, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.     The indictment in this case charges defendant with conspiring to (a) knowing and intentionally import in excess of five kilograms of cocaine into the United States, in violation of Title 21, United States Code, Sections 952 and 960, and (b) manufacture and distribute in excess of five kilograms of cocaine, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a) and 960, in violation of Title 21, United States Code, Section 963.

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment, which charges defendant with conspiring to (a) knowing and intentionally import in excess of five kilograms of cocaine into the United States, in violation of Title 21, United States Code, Sections 952 and 960, and (b) manufacture and distribute in excess of five kilograms of cocaine, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a) and 960, in violation of Title 21, United States Code, Section 963.

### Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning in or about 1992, and continuing until in or about January 2003, in Mexico and elsewhere, defendant VICENTE ZAMBADA NIEBLA, Ismael Zambada Garcia (a/k/a "Mayo"), Javier Torres Felix, Joaquin Guzman Loera, and others known and unknown, did unlawfully, knowingly, and intentionally combine, conspire, confederate and agree to commit the following offenses against the United States: (1) unlawfully, knowingly and intentionally import five kilograms or more of a mixture

2

and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, into the United States from the Republic of Mexico and the Republic of Colombia, in violation of Title 21, United States Code, Sections 952 and 960, and (2) manufacture and distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959 and 960.

Specifically, between approximately 1992 and 2003, Zambada Niebla agreed to work with Ismael Zambada Garcia, Javier Torres Felix, Joaquin Guzman Loera, and others to transport ton quantities of cocaine from Colombia to Mexico, where it was then illegally imported into the United States for distribution. In furtherance of the conspiracy, Zambada Niebla served as a top lieutenant to his father, Zambada-Garcia, and during the conspiracy, Zambada Niebla participated in, among other things, unloading the tonnage quantities of cocaine sent from Colombia from ships off of the Mexican coast. Zambada Niebla also participated in verifying the quantities of cocaine delivered to himself and his co-conspirators, and in the transportation of the drugs from Mexico into the United States.

Zambada Niebla acknowledges that, during the course of the conspiracy and in his role as a top lieutenant for his father, he managed and supervised in excess of five other individuals working on his and his co-conspirators' behalf.

3

Zambada Niebla was aware that Zambada-Garcia, Torres-Felix, Guzman Loera, and others used various methods, including but not limited to, private aircraft, submarines, and go-fast boats to transport cocaine from Colombia to Mexico and then into the United States. Defendant admits that both he and his father, as well as other members of the Sinaloa Cartel, were protected by the ubiquitous presence of weapons. Zambada Niebla himself had constant protection provided by bodyguards who possessed numerous military-caliber weapons. Zambada Niebla also admits that that he and his co-conspirators, including his father, used violence and made credible threats of violence both to rival cartels and to law enforcement within the Mexican government for the purpose of facilitating their organization's narcotics trafficking business.

Zambada Niebla acknowledges that, during the course of the conspiracy, the quantity of cocaine he distributed on his own behalf and that of his co-conspirators involved thousands of kilograms, and well exceeded 450 kilograms. Zambada Niebla also acknowledges that, at the time he helped to distribute the cocaine, he knew that it would be imported into and sold in the United States.

7.    The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for Zambada Niebla's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within Zambada Niebla's personal knowledge regarding the charged crimes and related conduct.

4

## Maximum Statutory Penalties

8. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. A maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 10 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $10,000,000. Defendant further understands that the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

9. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate

5

deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

      a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of the offense. The following statements regarding the calculation of the Sentencing Guidelines are based on the November 2002 Guidelines Manual.

      b.     **Offense Level Calculations**.

        i.     The base offense level is 38, pursuant to Guideline §§ 2D1.1(a)(3) and 2D1.1(c)(1), because the offense involved more than 150 kilograms of cocaine.

        ii.     The offense level should be increased by two levels, pursuant to Guideline § 2D1.1(b)(1), because a firearm was possessed in connection with the offense.

        iii.     The offense level should be increased two levels, pursuant to Guideline § 2D1.1(b)(2), because the offense involved importation of a controlled

substance in which an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance.

iv.     The offense level should be increased by four levels, pursuant to Guideline § 3B1.1(a), because the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.

v.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

7

c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

e.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 43, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of life imprisonment, in addition to any supervised release and fine the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 10 years' imprisonment.

f.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall

8

not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

g.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

11.     Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois or the Narcotics and Dangerous Drug Section. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines

that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable guideline. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline range and statutory minimum sentence rests solely with the Court. Defendant further understands that the government reserves the right to make whatever recommendation it deems appropriate regarding the extent of any downward departure.

13.    If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1 or 18 U.S.C. § 3553(e).

14.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above and subject to the statutory minimum penalty. Defendant further acknowledges that if the Court does not accept the sentencing

recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.    After sentence has been imposed on the indictment to which defendant pleads guilty to as agreed herein, and in light of the fact that defendant has agreed not to contest the entry of a forfeiture judgment in the amount of $1,373,415,000 in *United States v. Vicente Zambada-Niebla* (09 CR 383, J. Castillo), the government will move to dismiss the forfeiture allegation in this case.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 18 CR 484.

18.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

19.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a

reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.     **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he

had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

14

20.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

21.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

22.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

15

23.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

24.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25.     Based on defendant's complete and continuing cooperation, the government agrees to take all appropriate measures, in its sole discretion, to address any serious security concerns that might arise affecting the defendant or his family as a result of his cooperation. Additionally, if the Defendant requests, and in the judgment of this Office the request is reasonable, this Office will recommend to other offices in the U.S. Government that the defendant and, if appropriate, his family

16

members, be allowed to remain permanently in the United States through appropriate means. Defendant understands that this Office has authority only to recommend such a course of action and that the final decision whether to grant such relief rests within other offices of the Department of Justice and with other agencies of the U.S. government, which will make their independent decision in accordance with applicable law, policy, and procedures.

26.    Subject to paragraph 25 above, defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

## Conclusion

27.    Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

17

28.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

30.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

18

31.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorneys. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE:  ___11/8/2018___


_____          _____
JOHN R. LAUSCH, JR.                          VICENTE ZAMBADA NIEBLA
United States Attorney                          Defendant

_____          _____
ERIKA L. CSICSILA                               ALVIN MICHAELSON
Assistant U.S. Attorney                        Attorney for Defendant

                                                        _____
                                                        FRANK PEREZ
                                                        Attorney for Defendant


19