1

```
1                 IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
2                        EASTERN DIVISION

3
     UNITED STATES OF AMERICA,        )
4                                     )
                          Plaintiff,  )  Case No. 18 CR 484-1
5                                     )
     -vs-                             )  Chicago, Illinois
6                                     )  November 8, 2018
     VICENTE ZAMBADA-NIEBLA,          )  2:01 p.m.
7                                     )
                          Defendant.  )
8

9                    TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE CHIEF JUDGE RUBEN CASTILLO
10
     APPEARANCES:
11
     For the Government:    MS. ERIKA L. CSICSILA
12                          MR. CHRISTOPHER P. HOTALING
                            Assistant U.S. Attorneys
13                          219 S. Dearborn Street
                            Chicago, IL  60604
14                          (312) 353-5300
                            E-mail:  Erika.csicsila@usdoj.gov
15                                   Christopher.hotaling@usdoj.gov

16   For the Defendant:     MR. ALVIN S. MICHAELSON
                            1901 Avenue of the Stars
17                          Suite 615
                            Los Angeles, CA  90067
18                          (310)278-4984
                            E-mail:  Michaelsonlaw@justice.com
19

20

21   Court Reporter:

22              KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                       Official Court Reporter
23                   United States District Court
              219 South Dearborn Street, Suite 2524-A
24                   Chicago, Illinois  60604
                   Telephone:  (312) 435-5569
25              Kathleen_Fennell@ilnd.uscourts.gov
```

```
 1   APPEARANCES:   (Continued)

 2   For the Defendant:      MR. FRANK A. PEREZ
                             Law Office of Frank A. Perez
 3                           9110 Scyene Road
                             Dallas, TX  75227
 4                           (214) 828-9911
                             E-mail:  Frank@frankperezlaw.com
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      (Proceedings heard in open court:)

2         THE CLERK:  18 CR 484, United States versus Vicente

3  Zambada-Niebla.

4         THE COURT:  Good afternoon.

02:01:59    5         MR. MICHAELSON:  Good afternoon, Your Honor.  How are

6  you?

7         THE COURT:  I'm good.

8         MR. MICHAELSON:  Alvin Michaelson and Frank Perez on

9  behalf of Mr. Vicente Zambada-Niebla who is present in court

02:02:11   10  with the interpreter.

11         THE COURT:  Let's swear in our interpreter before we

12  go any further.

13      (Interpreter sworn.)

14         THE COURT:  Okay.  And on behalf of the government?

02:02:25   15         MS. CSICSILA:  On behalf of the government, good

16  afternoon, Judge, Erika Csicsila and Christopher Hotaling.

17         MR. HOTALING:  Good afternoon, Your Honor.

18         THE COURT:  Good afternoon.

19         So as I understand it, Mr. Zambada-Niebla is now

02:02:37   20  being arraigned on the superseding indictment, or is it the

21  indictment that was transferred in from the District of

22  Columbia?

23         MS. CSICSILA:  Correct.  It's the indictment from the

24  District of Columbia.

02:02:49   25         THE COURT:  Okay.  I got it.

1    And he intends to offer a plea of guilty to the

2  indictment that's been transferred from the District of

3  Columbia?

4    MS. CSICSILA:  Yes, Judge.

02:03:02    5    MR. MICHAELSON:  Yes, that's correct.

6    THE COURT:  Okay.

7    So, Mr. Zambada-Niebla, this is a transfer of the

8  case that was pending in the District of Columbia to this

9  district and particularly to my courtroom, and it's my

02:03:22   10  understanding as you answer these charges that your attorneys

11  have informed me that you wish to plead guilty pursuant to a

12  written plea agreement that your attorneys, Mr. Perez and

13  Mr. Michaelson, have negotiated with the government.

14    Do you understand that?

02:03:40   15    THE DEFENDANT:  Yes, Your Honor.

16    THE COURT:  And what I'm going to do, before I can

17  accept your plea, I need to determine that you're competent to

18  plead at this time; that you've had the assistance of counsel;

19  that you understand your trial rights with regard to this

02:04:01   20  indictment, because if you plead guilty, you're going to be

21  waiving those trial rights; that you understand the charges

22  against you, as well as the penalties that could apply to

23  these charges; that your plea is voluntary; and, finally, that

24  there is a factual basis for your plea to these charges.

02:04:24   25    So in order to make all these determinations, I have

1    to place you under oath and ask you questions about this

2    matter, but before I do that, I want you to understand that if

3    at any point you have a question, you're free to ask me a

4    question, or, in the alternative, you can ask me to stop these

02:04:48    5    proceedings so that you can speak to your attorneys privately.

6            I also need to warn you that any false answers to

7    questions that I pose to you could needlessly aggravate your

8    sentence and, in fact, subject you to additional charges for

9    what are known as the crimes of perjury or false statement.

02:05:13    10           And, finally, when I ask you to confirm the

11    government's summary of its evidence against you, you're going

12    to be waiving your right not to testify against yourself, and

13    some of your answers may be incriminating and certainly you'll

14    have to admit your guilt of these charges before I could ever

02:05:35    15    consider accepting a plea of guilty to these charges.

16           Do you understand what I've told you so far?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Then we will place you under oath.

19        (Defendant sworn.)

02:05:59    20           THE DEFENDANT:  I accept it.

21           THE COURT:  How far did you go in school?

22           THE DEFENDANT:  Up to high school, Your Honor.

23           THE COURT:  And are you in good physical health at

24    this time.

02:06:08    25           THE DEFENDANT:  Sorry?

1          THE COURT:  Are you in good physical health at this

2  time?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Have you taken any drugs or alcoholic

02:06:21  5  beverages within the last 24 hours?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Have you ever been treated by a doctor or

8  in the hospital for the treatment of a mental condition?

9          THE DEFENDANT:  No, Your Honor.

02:06:37  10          THE COURT:  Mr. Perez or Mr. Michaelson, do you have

11  any doubt, given your extensive representation of

12  Mr. Zambada-Niebla, as to his competence?

13          MR. MICHAELSON:  It has been extensive, Your Honor,

14  and I have no doubt as to his competence.

02:06:55  15          THE COURT:  Mr. Perez.

16          MR. PEREZ:  No doubt, Your Honor.

17          THE COURT:  Okay.  Has the government's investigation

18  cast any doubt on Mr. Zambada-Niebla's competence?

19          MS. CSICSILA:  No, Your Honor.

02:07:07  20          THE COURT:  The Court finds that Mr. Zambada-Niebla

21  is fully competent to proceed.

22          Changing subjects, Mr. Zambada-Niebla, have you had

23  enough time to talk to your attorneys about these charges?

24          THE DEFENDANT:  Yes, Your Honor.

02:07:23  25          THE COURT:  Have you told your attorneys everything

1  you know about this case?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Are you satisfied with the advice and

4  efforts of Mr. Michaelson and Mr. Perez on your behalf?

02:07:39  5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Now we're going to go over the charges,

7  so now we're switching to the topic of the charges.

8          The indictment in this case charges you with

9  conspiring to knowingly and intentionally import in excess of

02:07:58  10  five kilograms of cocaine into the United States and to

11  manufacture and distribute in excess of 5 kilograms of

12  cocaine, intending and knowing that such substance would be

13  unlawfully imported into the United States in violation of

14  federal law.

02:08:18  15          Do you understand that that's the charge that you

16  would be pleading guilty to?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Now we're going to talk about the

19  penalties that could apply to that charge, and this is

02:08:33  20  contained on Page 5 of the plea agreement.

21          It says that you understand that the charge to which

22  you're pleading guilty to carries a maximum sentence of life

23  imprisonment, a statutory mandatory minimum sentence of

24  ten years.

02:08:55  25          Do you understand that?

1     THE DEFENDANT:  Yes, Your Honor.

2     THE COURT:  So the minimum sentence that I could

3  impose is ten years, and the maximum sentence that I could

4  ever impose is a sentence of life imprisonment.  Do you

02:09:10  5  understand that?

6     THE DEFENDANT:  Yes, Your Honor.

7     THE COURT:  This sentence would not allow you to be

8  sentenced to a term of probation for this offense.  The

9  offense also carries a maximum fine of $10 million.

02:09:31  10     Do you understand all of that?

11     THE DEFENDANT:  Yes, Your Honor.

12     THE COURT:  Then, after whatever sentence I impose, I

13  can place you on what's called a term of supervised release

14  which has to be at least five years and can be up to all the

02:09:52  15  years that remain in your life.

16     Do you understand that?

17     THE DEFENDANT:  Yes, Your Honor.

18     THE COURT:  During that period of time, if and when

19  you're released from custody, your behavior would be

02:10:08  20  monitored, but you would not be in custody.

21     Do you understand that?

22     THE DEFENDANT:  Yes, Your Honor.

23     THE COURT:  But if you commit any further violations

24  of the law during the period of time you're on supervised

02:10:23  25  release, you could be automatically reincarcerated once those

1    violations are proven in court.

2             Do you understand that?

3             THE DEFENDANT:  Yes, Your Honor.

4             THE COURT:  In addition to the potential maximum fine

02:10:38    5    of $10 million, you will also be assessed $100 on the charge

6    that you're pleading guilty to.

7             Do you understand that?

8             THE DEFENDANT:  Yes, Your Honor.

9             THE COURT:  Now, we've been talking about the minimum

02:10:56    10   and the maximum.  Let me also talk to you about what are known

11   as the advisory sentencing guidelines.

12            The advisory sentencing guidelines are a series of

13   federal laws that I will look at in the first instance to

14   determine a potential advisory sentencing range for your case,

02:11:21    15   and I will, in determining and applying these advisory

16   sentencing guidelines, I will first look at how many drugs

17   were involved in this case.

18            I will then look at whether or not a firearm was part

19   of this offense.  Then, after looking at all the other

02:11:46    20   relevant factors with regard to the offense, I will look at

21   your role in the offense, whether or not you were what's known

22   as an organizer or leader.

23            Then I will look at the fact that you are accepting

24   responsibility for your criminal conduct and that you are

02:12:09    25   giving timely notice to the government of your intention to

1  plead guilty.

2       I will then look at your background and whether or

3  not you have any criminal background or experience with the

4  United States criminal justice system, and it seems that you

02:12:30  5  don't, so you're going to be the lowest Criminal History

6  Category.

7       Once I look at that, it's anticipated that the

8  advisory sentencing guideline range is going to be a Level 43,

9  but I will make the final determination, but if it does turn

02:12:52  10  out to be a Level 43, the advisory sentencing guideline range

11  will be life imprisonment, but that is an advisory range.

12       What you do need to know is that the charge that

13  you're pleading guilty to has a minimum statutory sentence of

14  ten years, so that there is no easy way for me to sentence you

02:13:21  15  less than ten years.

16       Do you understand that?

17       THE DEFENDANT:  Yes, Your Honor.

18       THE COURT:  Now, in Paragraph 11 of this plea

19  agreement, it says that you're agreeing to fully and

02:13:36  20  truthfully cooperate in any matter in which you are called

21  upon to cooperate by a representative of the United States

22  Attorney's Office, and that this cooperation will include

23  complete and truthful information in any investigation and

24  pretrial preparation and complete and truthful testimony in

02:14:04  25  any criminal, civil or administrative proceeding.

1    Finally, the cooperation paragraph says that you're

2    agreeing to postpone your sentencing until the conclusion of

3    your cooperation.

4    Then the very next sentence -- next paragraph says

02:14:27    5    that at the time of sentencing, the government will make known

6    to me the extent of your cooperation.  If the government

7    determines that you've provided full and truthful cooperation,

8    then the government will move, pursuant to the advisory

9    sentencing guidelines, for me to depart downward from the low

02:14:55    10    end of the applicable guideline, and then your attorneys will

11    be free to recommend any sentence that may be appropriate.

12    Do you understand that?

13    THE DEFENDANT:  Yes, Your Honor.

14    THE COURT:  And you understand that I will be free to

02:15:23    15    impose whatever sentence I believe is appropriate between the

16    ten-year mandatory minimum and the maximum of life

17    imprisonment.

18    Do you understand that?

19    THE DEFENDANT:  Yes, Your Honor.

02:15:39    20    THE COURT:  And you understand that with regard to

21    the other charge that you've already pled guilty to that was

22    originally pending before me, this is in Paragraph 16, 09

23    CR 383, that you've already agreed to a forfeiture judgment in

24    the amount -- how much is the amount of the forfeiture

02:16:10    25    judgment?

1       MS. CSICSILA:  $1,373,415,000.

2       THE COURT:  Okay.  I wanted to make sure.  It's been

3  a while since we covered that.

4       MS. CSICSILA:  It's a rather large number.

02:16:20   5       THE COURT:  So the forfeiture judgment is in the

6  amount of $1,373,415,000.

7       Do you understand that?

8       THE DEFENDANT:  Yes, Your Honor.

9       THE COURT:  Now, I need to ask you a couple of tough

02:16:40  10  questions about your potential penalty or your potential

11  sentence.

12       Has anyone promised you that you will get a specific

13  sentence?

14       THE DEFENDANT:  No, Your Honor.

02:16:56  15       THE COURT:  Because you need to know that as the

16  person that will have the responsibility of sentencing you, as

17  I sit here right now, I do not have a firm idea as to what

18  your sentence will be, and I will not have a firm idea as to

19  what your sentence will be until you complete your cooperation

02:17:20  20  and I receive a report about your background, your life, and

21  everything that led up to these charges.

22       Do you understand that?

23       THE DEFENDANT:  Yes, Your Honor.

24       THE COURT:  So I need to emphasize to you,

02:17:40  25  Mr. Zambada-Niebla, that there's no one who is walking on

1   earth who could promise you that Judge Castillo is going to

2   impose a specific sentence because that's just an

3   impossibility because I have no idea what your sentence is

4   going to be.

5   02:18:00        Do you understand that?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  People can make predictions, but they can

8   be wrong.  I need you to know that.

9           THE DEFENDANT:  Yes, Your Honor.

10   02:18:14       THE COURT:  Has anyone threatened you to get you to

11   plead guilty to this charge?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  Has anyone promised you anything to get

14   you to plead guilty to this particular charge?

15   02:18:29       THE DEFENDANT:  No, Your Honor.

16          THE COURT:  Is your decision to plead guilty entirely

17   voluntary on your part?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Now, I need you to understand that you

20   02:18:43   would have the right, even though you've pled guilty to this

21   other charge, you would have the right on this charge to just

22   plead not guilty today and to proceed to trial.

23          Do you understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25   02:18:57       THE COURT:  And if you plead guilty, you're going to

1  be giving up your trial rights on this charge.  Do you

2  understand that?

3        THE DEFENDANT:  Yes, Your Honor.

4        THE COURT:  Now, I'm going to explain these trial

02:19:09  5  rights to you even though we talked about this some time ago,

6  but I want you to understand very particularly what your trial

7  rights are.

8        First of all, you would have a right to proceed to a

9  potential jury trial or to a potential trial where I decide if

02:19:30  10  you're guilty or not guilty.

11        To get a trial where I decide if you're guilty or not

12  guilty, which is called a bench trial, everyone would have to

13  agree to that procedure.  You would have to agree to waive

14  your rights to a jury, the government have to agree to waive

02:19:52  15  their right to a jury, and then I would also have to agree

16  that I'm willing to make a decision as to whether or not you

17  were guilty or not guilty after hearing all the evidence.

18        Do you understand that?

19        THE DEFENDANT:  Yes, Your Honor.

02:20:08  20        THE COURT:  So all three parties, you, the government

21  and I, all have to agree before you could ever have a bench

22  trial.

23        On the other hand, no one has to agree at all for you

24  to have a jury trial, not even me.  All you have to do is

02:20:26  25  stand here and say "I do not want to plead guilty," and you

1    could proceed to a jury trial.

2    In a jury trial, we would gather citizens from

3    throughout this federal district and endeavor to find 12

4    people who could be fair and unbiased in deciding your case.

02:20:53    5    I would in the first instance question all of these

6    people to determine if they could be fair and unbiased.

7    They would have to satisfy me that they understand

8    that you're presumed innocent, that the government has the

9    burden of proof of proving your guilt beyond a reasonable

02:21:17    10    doubt, and that you have no burden at all.

11    If they couldn't satisfy me that they could apply

12    these principles to your case, I would excuse them.  Even

13    after I excused all the potential jurors I thought were not

14    going to be fair because they know too much about this case or

02:21:42    15    because they couldn't apply these principles, you would still

16    have the right to excuse as many as 10 jurors for whatever

17    reason you saw fit, that is, prospective jurors, as long as

18    you didn't discriminate against any one group of people

19    because of their background.

02:22:08    20    Do you understand that?

21    THE DEFENDANT:  Yes, Your Honor.

22    THE COURT:  So you and your attorneys, Mr. Perez and

23    Mr. Michaelson, would actively participate in the jury

24    selection.  Once we selected a fair jury, we would then

02:22:24    25    proceed with the trial itself.  The government's attorney, as

1   well as your attorney, would make opening statements to the

2   jury, outlining what they thought their initial positions were

3   in the case.

4       Then the government would proceed first with the

02:22:45   5   evidence because the government has the burden of proof.  The

6   government would present their evidence and the testimony of

7   witnesses.

8       Your attorneys would have the right to question all

9   of the government's witnesses and object to any of the

02:23:04   10   government's evidence, and I would rule on those objections by

11   applying the rules of evidence.

12       Once the government rested their case, if I

13   determined there was enough evidence to proceed to a jury

14   verdict, it is at that point that you have the right to

02:23:25   15   present a defense case, and I would let you and your attorneys

16   use the subpoena power of this Court to obtain any testimony

17   of witnesses or the production of any evidence that might be

18   favorable to your defense.

19       You also have the right but not the obligation to

02:23:51   20   testify in your own defense.  If you wanted to testify in your

21   own defense, you could do so.  On the other hand, if you

22   decided not to testify in your own defense, I would instruct

23   the jury that they could not infer that you were guilty

24   because you did not testify in your own defense.

02:24:13   25       Once all the evidence had been presented to the jury,

1    then the attorneys would once again address the jury in

2    closing arguments, and then I would instruct them on the law

3    that applied to the case.

4            I would tell them that the government has to prove

02:24:31   5    your guilt beyond a reasonable doubt.

6            Now, even if the jury by way of a unanimous jury

7    verdict found you guilty, you would have a right to appeal

8    that verdict.  If all 12 jurors couldn't agree on a verdict,

9    then we would just retry your case until we obtained a

02:24:54   10   unanimous jury verdict of not guilty or guilty.

11           But if you plead guilty here this afternoon, there's

12   never going to be a trial for you on this charge, and you will

13   be waiving your trial rights.

14           Do you understand that, Mr. Zambada-Niebla?

02:25:16   15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  Knowing all that I've told you, is it

17   your desire to waive your trial rights in this case?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  Now, in this case, we've been talking

02:25:28   20   about a written plea agreement.  It is 19 pages long.  I'm

21   going to show you the 19th page, and I'm going to ask you is

22   that your signature on the 19th page?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  And did you go over this document with an

02:25:52   25   interpreter and your attorneys before signing it?

1    THE DEFENDANT:  Yes, Your Honor.  Actually, my

2    lawyers even sent it to me in Spanish.

3    THE COURT:  Okay.

4    Is there anything about this 19-page document that

02:26:09    5    you don't understand that I can try and answer for you?

6    THE DEFENDANT:  No, Your Honor.

7    THE COURT:  Have any agreements or promises been made

8    to you, Mr. Zambada-Niebla, that are not contained in this

9    19-page agreement?

02:26:28    10    THE DEFENDANT:  No, Your Honor.

11    THE COURT:  Because I can tell you,

12    Mr. Zambada-Niebla, that if promises or agreements have been

13    made that are not contained in this 19-page agreement, they

14    are not binding.  They will not be something that you can rely

02:26:49    15    on.

16    Do you understand?

17    THE DEFENDANT:  Yes, Your Honor.

18    THE COURT:  I'm now going to change subjects --

19    unless there's some particular provision of the plea agreement

02:27:06    20    you want, the government wants me to go over.

21    MS. CSICSILA:  Judge, there is --

22    THE COURT:  Okay.

23    MS. CSICSILA:  -- I would just highlight that there

24    is a full appellate waiver in place if the government does

02:27:16    25    make a 5K motion.

1      THE COURT:  Okay.

2      MS. CSICSILA:  And we do anticipate making that

3      motion.

4      THE COURT:  Okay, that's paragraph?

02:27:21    5      MS. CSICSILA:  That is at paragraph --

6      MR. HOTALING:  Page 14.

7      MS. CSICSILA:  Page 14.

8      MR. HOTALING:  Paragraph --

9      MS. CSICSILA:  Page 13 and 14.

02:27:30   10      THE COURT:  13 and 14.  Let me go over that.

11      MS. CSICSILA:  19 b.

12      THE COURT:  Okay.

13      So Mr. Zambada-Niebla, let me just point out that by

14      pleading guilty in Paragraph 19 b. of this plea agreement at

02:27:45   15      pages 13 continuing into 14, it says that you understand

16      you're waiving all appellate issues that might have been

17      available if you had exercised your right to a trial, and that

18      even though federal law allows you to appeal your conviction

19      and sentence, if the government makes the motion for a

02:28:13   20      downward departure, you're waiving your right to appeal your

21      conviction, any pretrial rulings by the Court, and any part of

22      the sentence or the manner in which that sentence was

23      determined, including any term of imprisonment and fine within

24      the maximum provided by law.

02:28:36   25      Do you understand that?

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  Sometimes, Mr. Zambada-Niebla, as much as

3   a year after somebody is serving a sentence, they can bring

4   what's called a collateral challenge pursuant to federal law.

02:28:55    5   You're also, Mr. Zambada-Niebla, giving up your right to bring

6   that type of challenge except for the fact that you can still

7   somehow claim that this plea agreement was not voluntarily

8   given or that you did not receive effective assistance of

9   counsel in making this plea and agreeing to this plea

02:29:24   10   agreement.

11      Do you understand that?

12      THE DEFENDANT:  Yes, Your Honor.

13      THE COURT:  You're also not giving up your right to

14   seek a reduction of the sentence if there is some change in

02:29:37   15   the law or some change with regard to the Sentencing

16   Guidelines that is made retroactive by either an act of

17   Congress, a Supreme Court ruling, or a decision of the United

18   States Sentencing Commission.

19      Do you understand that?

02:30:00   20      THE DEFENDANT:  Yes, Your Honor.

21      THE COURT:  So now, I'm going to turn to the facts of

22   this case, and I'm going to ask the government to summarize

23   what those facts would be.

24      I'm going to ask you to pay as close attention to

02:30:21   25   these facts as you can, Mr. Zambada-Niebla.  I know some of

1  them are contained in the plea agreement, if not all of them,

2  but at the end of this summary, I'm going to be asking you if

3  you agree or disagree with the summary, or if you wish to

4  disagree with any one particular part of the summary, you can

02:30:42   5  let me know about that.

6          So with that understanding, the government can

7  proceed.

8          MS. CSICSILA:   Thank you, Judge.

9          If the government went to trial, the government would

02:30:50   10  expect to prove that beginning in or about 1992, and

11  continuing until in or about January 2003, in Mexico and

12  elsewhere, the defendant, Ismael Zambada-Garcia, Javier

13  Torres-Felix, Joaquin Guzman-Loera, and others known and

14  unknown, did unlawfully, knowingly, and intentionally combine,

02:31:13   15  conspire, confederate and agree to commit the following

16  offenses against the United States:

17          1, unlawfully, knowingly, and intentionally import

18  5 kilograms or more of a mixture and substance containing

19  cocaine into the United States from Mexico and from Colombia,

02:31:33   20  and also, 2, manufacture and distribute 5 kilograms or more of

21  a mixture containing cocaine, intending and knowing that such

22  substance would be unlawfully imported into the United States.

23          Specifically, between approximately 1992 and 2003,

24  the defendant agreed to work with Ismael Zambada-Garcia,

02:31:53   25  Javier Torres-Felix, Joaquin Guzman-Loera, and others, to

1    transport ton quantities of cocaine from Colombia to Mexico,

2    where it was then illegally imported into the United States

3    for distribution.  In furtherance of the conspiracy, the

4    defendant served as a top lieutenant to his father,

02:32:10    5    Zambada-Garcia, and during the conspiracy, the defendant

6    participated in, among other things, unloading the tonnage

7    quantities of cocaine sent from Colombia from ships off the

8    Mexican coast.

9         The defendant also participated in verifying the

02:32:26    10    quantities of cocaine delivered to himself and his

11    co-conspirators and in the transportation of the drugs from

12    Mexico into the United States.

13         The government would also expect to prove, and the

14    defendant acknowledges in his plea agreement, that during the

02:32:40    15    course of the conspiracy and in his role as a top lieutenant

16    for his father, the defendant managed and supervised in excess

17    of five other individuals working on his and his

18    co-conspirators' behalf.

19         The government would also prove that the defendant

02:32:54    20    was aware that Zambada-Garcia, Torres-Felix, Guzman-Loera and

21    others used various methods, including but not limited to,

22    private aircraft, submarines and go-fast boats to transfer

23    cocaine from Colombia to Mexico and then into the United

24    States.

02:33:13    25         The defendant admits in his plea agreement and the

1    government would also expect to prove at trial that both he

2    and his father, as well as other members of the Sinaloa

3    Cartel, were protected by the ubiquitous presence of weapons.

4    The defendant himself had constant protection provided by

02:33:28    5    bodyguards who possessed numerous military-caliber weapons.

6            The defendant also admits that he and his

7    co-conspirators, including his father, used violence and made

8    credible threats of violence both to rival cartels and to law

9    enforcement within the Mexican government for the purpose of

02:33:46    10    facilitating their organization's narcotics trafficking

11    business.

12            The government would prove at trial, and the

13    defendant acknowledges, that during the course of the

14    conspiracy, the quantity of cocaine he distributed on behalf

02:33:58    15    of -- on his own behalf and that of his co-conspirators

16    involved thousands of kilograms and well exceeded

17    450 kilograms.

18            The defendant also acknowledges and the government

19    would prove that at the time he helped distribute the cocaine,

02:34:14    20    he knew that it would be imported into and sold in the United

21    States.

22            THE COURT:  That completes the summary?

23            MS. CSICSILA:  That is the summary, yes, Judge.

24            THE COURT:  Mr. Zambada-Niebla, do you agree with the

02:34:27    25    government's summary?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  And did you knowingly participate in this

3   conspiracy to import the drugs that the prosecutor just

4   mentioned?

02:34:40    5        THE DEFENDANT:  Yes, Your Honor.

6        THE COURT:  And the only question that I have left is

7   what is your plea to the charges that were transferred from

8   Washington, D.C. to this court, guilty or not guilty?

9        THE DEFENDANT:  I plead guilty, Your Honor.

02:35:07   10        THE COURT:  Since you acknowledge,

11   Mr. Zambada-Niebla, that you are, in fact, guilty as charged

12   in this case, 18 CR 484, and you have had the assistance of

13   able and experienced counsel, you know your rights to a trial,

14   you know what the maximum possible punishment is, I find that

02:35:28   15   you are knowingly, intelligently, and voluntarily pleading

16   guilty.  I'll accept your plea of guilty, enter a judgment of

17   guilty on your plea.

18        At this point, we don't order a presentence report;

19   is that correct?  Or do you want me to order one?

02:35:46   20        MS. CSICSILA:  Judge, so the sentencing is set in the

21   09 CR 383 case --

22        THE COURT:  Okay.

23        MS. CSICSILA:  -- for February 27th --

24        THE COURT:  Okay.

02:35:51   25        MS. CSICSILA: -- of next year.

1    THE COURT:  Okay.  So we should do it, just have it

2  supplemented?

3    MS. CSICSILA:  The government would like to move to

4  consolidate --

5    THE COURT:  Okay.

6    MS. CSICSILA: -- that sentencing with this

7  sentencing.

8    THE COURT:  Okay.

9    MS. CSICSILA:  And I believe a PSR has already been

02:36:03  10  ordered in that case.  The probation officer is aware that we

11  were moving to ask to consolidate the cases for sentencing.

12    THE COURT:  Okay.  We will consolidate both cases for

13  sentencing.

14    MS. CSICSILA:  Thank you, Judge.

02:36:13  15    And then also, too, with respect to the defendant's

16  agreement, there is, as you noted, a cooperation provision.

17    The defendant has been cooperating with the

18  government, as you know, from the 09 CR plea agreement.  He

19  has continued to cooperate.  He's cooperating now, and we

02:36:28  20  expect that cooperation to continue into the future.

21    THE COURT:  Okay.

22    MS. CSICSILA:  So for now, we would ask that the

23  February date remain in place.

24    THE COURT:  Okay.

02:36:36  25    MS. CSICSILA:  And we'll work from there, if that's

1    all right with the Court.

2           THE COURT:  We'll work from there.  If we need to

3    change it, we will change it.

4           MS. CSICSILA:  Thank you, Judge.

02:36:44    5           MR. MICHAELSON:  I just have one comment.

6           THE COURT:  Sure, Mr. Michaelson.

7           MR. MICHAELSON:  I agree with everything that the

8    prosecutor has said.  I just want to make sure it's

9    understood, and it is, I think between us, that there will be

02:36:53   10    an imposition of one sentence.

11           THE COURT:  Absolutely.  There will be an imposition

12    of one sentence.  I see no need to impose two different

13    sentences even if they were to be totally concurrent.  It will

14    be one sentence.

02:37:07   15           Is that okay with the government?

16           MS. CSICSILA:  Yes, absolutely, Judge.

17           THE COURT:  Okay.

18           MS. CSICSILA:  Thank you.

19           THE COURT:  Okay.  The cases are consolidated.

02:37:12   20           Anything else we need to take care of?

21           MS. CSICSILA:  Nothing from the government.

22           THE COURT:  Okay.  Court stands in recess.  Thank

23    you.

24           MS. CSICSILA:  Thank you.

02:37:19   25           MR. MICHAELSON:  Thank you.

1    (Which were all the proceedings heard.)

2                        CERTIFICATE

3        I certify that the foregoing is a correct transcript from

4    the record of proceedings in the above-entitled matter.

5    */s/Kathleen M. Fennell*          *November 21, 2018*

6    _____          _____

7    Kathleen M. Fennell                      Date
     Official Court Reporter